UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:12CV-00110

HOMER MAIN                                                                    PLAINTIFF

VS.

RIO TINTO ALCAN INC; ALCAN
PRIMARY METAL GROUP; and
ALCAN PRIMARY PRODUCTS CORPORATION                        DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Rio Tinto Alcan Inc, Alcan

Primary Metal Group, and Alcan Primary Products Corporation, for summary judgment [DN

27]. Fully briefed, this matter is ripe for decision.

I.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no

genuine dispute as to any material fact and that the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the

basis for its motion and identifying that portion of the record that demonstrates the absence of a

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the

moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242,

247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-

moving party, the non-moving party must do more than merely show that there is some

"metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.  It is against this standard the Court reviews the following facts.

## II.  BACKGROUND

In 2002, Plaintiff, Homer Main, was hired as a laborer to work at an Alcan Primary Products Corporation smelter in Robards, Kentucky. During his employment, he was a member of the United Steelworkers Local 9443–00 ("the Union").  Plaintiff testified that shortly after he began working for Alcan, he was approached by Plant Manager Dick Lee and asked why he was not working.  Main explained to Lee that he was waiting because a crust-breaker and crane were broken.  Main explained to Lee that he had reported the needed repairs, but nothing had been done to resolve the problems.  Lee had the machinery repaired.  Plaintiff's supervisor Greg Atkinson asked Main why he went over Atkinson's head to report the problems and told Main that he would not forget it.

On July 17, 2004, while performing his duties as a crane operator, Main received a verbal warning from his crew leader, Dan Fuller, when a crust-breaker he was carrying dislodged from the crane hook and fell to the floor.  On August 23, 2004, while performing his duties as a crane operator, Main received a written warning from Fuller when he turned over a blue carbon cover bucket onto a series of green blocks positioned in the center aisle of the room.  On May 11, 2005, Main received a final written warning from Fuller for operating his crane before the shift started.

2

On March 9, 2006, Main informed Fuller that while he was carrying a jacking frame from his

crane, the jacking frame came into contact with a pot, causing damage to the leg and guide bar of

the jacking frame.  Main was suspended for one week and was permitted to return to work under

the terms of a Last Chance Agreement which was signed by Main, Alcan's Human Resource

Manager Karen Cecil, and Union President Butch Puttman on March 16, 2006.

The Last Chance Agreement provides in relevant part:

> Mr. Main will have breached this "Last Chance Agreement" if he violates any written policy of Alcan Sebree now in effect or that may be in effect in the future or fails to fulfill any duty imposed upon him by the present or any future collective bargaining agreement or violates any terms of this "Last Chance Agreement."  Any breach of this "Last Chance Agreement" shall result in immediate termination of Mr. Main's employment at Alcan Sebree.

(Last Chance Agreement ¶ 2.)  Paragraph 4 of the Last Chance Agreement further provides:

> This "Last Chance Agreement" shall remain in effect for a period of twenty-four (24) months from the date of the agreement. At the end of the twenty-four (24) month period, Alcan Sebree's Human Resource Manager and Mr. Main's direct superintendent will evaluate Mr. Main's work performance and compliance with Plant Rules of Conduct and make a determination as to whether it is necessary to extend the last chance agreement for an additional period of time.  In the event Alcan Sebree elects to extend the applicability of the last chance agreement for an additional period of time, this determination shall not be subject to any challenge by Mr. Main or the Union. The decision to extend the applicability of the last chance agreement for an additional period of time shall be in the sole and absolute discretion of Alcan Sebree.

(Id. at ¶ 4.)

Plaintiff testified that in 2008 he requested that his Last Chance Agreement be removed

from his file due to the lapse in time without a subsequent violation.  On June 6, 2008, Greg

Atkinson, Alcan's Potline Superintendent, and Pam Schneider, an Alcan Human Resource

Representative, reviewed the Last Chance Agreement and Main's performance over the last two

years and decided that it was not appropriate to remove the Last Chance Agreement.  They indicated that they would reconsider the possibility of removing the Last Chance Agreement in two more years which would be March 2010.[1]

Between July 2009 and June 2010, Plaintiff was on medical leave.  On October 11, 2010, Puttman requested that Cecil review Main's agreement.  On October 12, Cecil circulated an internal memo stating that she had taken the request to the management team, and they declined to remove the LCA at that time.  On December 16, 2010, Matt Owens, Alcan's Safety Officer, reported to Cecil that the day before he observed Main working without his respirator mask.  Owens reported that he instructed Main to put it on, and Main put it on.  On December 16, 2010, Main was suspended for violating a Plant Rule of Conduct.  Main's Suspension Note read as follows: "Minor Violation #1 Unacceptable work performance.  You were not wearing your respirator which is a zero tolerance policy and you were instructed of that requirement on October 6, 2010.  You are on a Last Chance Agreement, accordingly it has been determined that you will be suspended pending further investigation." (Suspension Note, Plaintiff's Exhibit L.)  Main was suspended from work for one week and then permitted to return under the terms of a Supplemental Last Chance Agreement which was signed by Main, Schneider, and the new Union President Charlie Hiatt on December 21, 2010.

The Supplemental Last Chance Agreement provides that "[i]n consideration of this agreement, the Union and Mr. Main agree that the terms of this agreement supersede any collective bargaining agreement or other policy of Rio Tinto Alcan." (Supplemental Last Chance Agreement ¶ 3.)  The Supplemental Last Chance Agreement further provides as follows:

---

[1] Main notes that the Union did not grieve Alcan's failure to comply with the term of review requirements of the Last Chance Agreement, despite the clear language of Article 21 of the collective bargaining agreement. Article 21 provides that "The Company retains the right to discipline or discharge employees for just cause.  It is the Company's intent to not use discipline in excess of two (2) years for accumulation purposes."  (Plaintiff's Response at 5.)

This "Supplemental Last Chance Agreement" shall remain in effect until the Company's Human Resource Manager and Mr. Main's direct superintendent determine that the Last Chance Agreement should no longer remain in effect.

It is agreed that this agreement will be considered a full and complete settlement of this matter and specifically that Rio Tinto Alcan's action in this matter will not be subject to the grievance and/or arbitration procedure or to any other review.

(Supplemental Last Chance Agreement ¶¶ 4, 5.)

Plaintiff testified that in early 2011, he corrected James Edge, his crew leader, on two matters: the use of an improper fork lift for a project and the overtime policy.  Additionally, Plaintiff testified that in May 2011, he complained to Rod Shanks, his supervisor, about fans, air conditioning, and heat stress.  In August 2011, Plaintiff also reported this same issue to Plant Manager Stephan LeBlanc.

On August 25, 2011, three Alcan administrators witnessed Main and Jerry Houston, a co-worker, walking out of the lunchroom into the potlines with their respirator masks down.  On September 1, 2010, Main was suspended for violating a Plant Rule of Conduct for not wearing his respirator. On September 1, Union Steward Cliff Eagles grieved Main's suspension and requested that he be reinstated.  On September 8, 2011, Main was terminated pursuant to the terms of a Last Chance Agreement and Supplemental Last Chance Agreement.

On October 12, 2011, Union President Charlie Hiatt received a letter from Kenny Barkley, Alcan's Senior Labor Relations Leader, informing the Union that Main's Second Step grievance had been denied and that the company believed the discipline appropriate and warranted.  On October 18, 2011, Hiatt sent a letter to Barkley requesting copies of Mann's personnel file, disciplinary record, training records, and employee evaluations to prepare for

5

Main's arbitration.[2]

Plaintiff filed suit against Rio Tinto Alcan Inc., Alcan Primary Metal Group, and Alcan Primary Products Corporation (collectively "Defendants") on August 24, 2012, in Webster Circuit Court alleging (1) a breach of duty of fair representation in violation of Section 301 of the National Labor Relations Act; (2) violation of Section 102 of the Family and Medical Leave Act; (3) breach of contract; (4) wrongful termination; (5) breach of the covenant of good faith and fair dealing; and (6) intentional infliction of emotional distress. On September 14, 2012, Defendants removed the case to the United States District Court for the Western District of Kentucky, Owensboro Division claiming it has jurisdiction by reason of federal question jurisdiction, supplemental jurisdiction, and diversity jurisdiction.  Defendants now move for summary judgment.

## III.  DISCUSSION

Defendants argue that summary judgment on Plaintiff's claims should be granted because (A) Rio Tinto Alcan Inc. and Alcan Primary Metal Group were not properly served, (B) Plaintiff failed to join a necessary party, the labor union, and (C) there are no genuine issues of material fact which Plaintiff could prove to successfully pursue any of the six claims alleged in the complaint.

### A.  Insufficient Service of Process

Defendants argue that Rio Tinto Alcan Inc. and Alcan Primary Metal Group must be dismissed because of insufficient service of process.  Copies of the complaint were served upon Rio Tinto Alcan Inc. and Alcan Primary Metal Group by delivery to the Plant Manager at the Alcan Primary Products Corporation smelter in Robards, Kentucky. Defendants claim that the Plant Manager is not the registered agent for service of process or an agent for Rio Tinto and that

---

[2] Main filed his complaint prior to completion of the arbitration.

no legal entity known as Alcan Primary Metal Group exists. Defendants acknowledge that Alcan Primary Product Corporation may occasionally use trade names "Alcan Primary Metal Group" and "Rio Tinto Alcan."  However, Defendants maintain that all business conducted in Kentucky is conducted through Alcan Primary Product Corporation, the legal entity registered in Kentucky. Defendants ask that the Complaint against Rio Tinto Alcan Inc. and Alcan Primary Metal Group be dismissed because of insufficient service of process.

Federal Rule of Civil Procedure 4(h)(1) states that a corporation must be served in a judicial district in the United States in accordance with Federal Rule of Civil Procedure 4(e)(1) or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. . . ." Fed. R. Civ. P. 4(h)(l)(A)-(B).  Federal Rule of Civil Procedure 4(e)(1) states that an individual may be served in accordance with state law where the district court is located or the service is made. Fed. R. Civ. P. 4(e)(1).   Pursuant to Kentucky Rule of Civil Procedure 4.04(5), a corporation may be served by "'serving an officer or managing agent thereof, or the chief agent in the county wherein the action is brought, or any other agent authorized by appointment or by law to receive service on its behalf.'" Oyekunle v. Morgan & Pottinger, P.S.C., 2014 WL 6977819, *1 (W.D. Ky. Dec. 9, 2014)(citing Ky. Civ. R. 4.04(5)); see also PNC Bank, N.A. v. Citizens Bank of Northern Ky., Inc., 139 S.W.3d 527 (Ky. App. 2003)(finding service of a bank branch manager sufficient stating "service on a corporation [must] be made on a representative who is so integrated with the corporation that it is reasonable to presume that the representative will know what to do with the legal papers served on him").

In the present case, Plaintiff filed suit in Webster County, Kentucky, and served Rio Tinto Alcan Inc. and Alcan Primary Metal Group pursuant to Kentucky Rule of Civil Procedure

4.04(5) via the Plant Manager Serge Gosselin at the Alcan smelter located in Robards, Kentucky. The termination letter issued to Plaintiff from Human Resource Supervisor Karen Cecil identifies her as an employee of Rio Tinto Alcan and notes that the Rio Titan Alcan Registered Office is located at 9404 State Road 2096, Robards, Kentucky. Plant Manager Gosselin is a representative who is so integrated with the corporation that it was reasonable for Plaintiff to presume that he would know what to do with the legal papers served on him. See PNC Bank, 139 S.W.3d 527.

With respect to Alcan Primary Metal Group, Defendants submit the affidavit of Jeremy Jenkins, Financial Manager of Alcan smelter located in Robards. Jenkins avers that "Alcan Primary Metal Group is not a legal entity and is merely a trading name." (Jenkins Affidavit ¶ 5.) Assuming Alcan Primary Metal Group is a trade name or "d/b/a" of the operating company of Alcan Primary Products Company, the cause of action against Alcan Primary Metal Group is merely a suit against Alcan Primary Products Company and service has been properly effectuated as to that Defendant. Accordingly, the Court denies the motion to dismiss Rio Tinto Alcan Inc. and Alcan Primary Metal Group for insufficient service of process.

### B. Failure to Join a Necessary Party

In Count I, Main alleges that, under Section 301 of the National Labor Relations Act, Alcan Sebree violated the Collective Bargaining Agreement ("CBA") by discharging Main without just cause, by using discipline in excess of two years for accumulation purposes, by failing to provide a safe and healthy working environment, and by failing to recognize Main's duty to report unsafe working conditions. The Union and Alcan Sebree are parties to the CBA which governed the terms and conditions of Main's employment. Although he did not join the Union as a party to this action, Main alleges in his complaint that the Union breached its duty of fair representation. Because Main did not join the Union, Defendants argue that the Court

8

should dismiss the complaint for failure to join a necessary party under Federal Rule of Civil Procedure 12(b)(7).  Defendants contend that where a claim derives from a CBA, the CBA includes an exclusive contractual remedy, and the employee fails to exhaust the contractual grievance process, the employee must join the union in the lawsuit.  The Court disagrees.

"A claim under § 301 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 185(a) is the consolidation of two separate yet interdependent actions, first being against the employer for breach of the Collective Bargaining Agreement and the second being against the union for breach of its duty of fair representation."  Stewart v. Proctor & Gamble Co., 2007 WL 5476142, *2 (S.D. Ohio Apr. 10, 2007). See also Fine v. CSX Transp., Inc., 229 F.3d 1151 (6th Cir. 2000). "Where Plaintiff asserts a hybrid § 301 claim, the action implicates the interrelationship among union members, their union, and their employer. Section 301 of the NLRA vests jurisdiction in the federal district courts over '[s]uits for violation of contracts between an employer and a labor organization.'" Id.  As noted by the United States Supreme Court in DelCostello v. International Brotherhood,

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.  "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" [United Parcel Service, Inc. v.] Mitchell, 451 U.S. [56, 66–67 (1987)] (Stewart, J., concurring in the judgment), quoting Hines, 424 U.S., at 570–571, 96 S.Ct., at 1059. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

DelCostello, 462 U.S. at 164-65.

In the present case, Main alleges that Alcan Sebree breached the CBA.  Further, Main alleges that the Union breached its duty of fair representation.  "Although the Union's breach is a necessary element to this Section 301 claim, the Union itself is not a necessary party." Balsamo, 2005 WL 396303, *2 (citing DelCostello, 462 U.S. at 165).  See also International Brotherhood of Elec. Workers, Local 58, AFL-CIO v. Metro Elec. Engineering Techs., Inc., 880 F. Supp. 2d 770, 774 (E.D. Mich. 2012)(citing Armstrong v. U.S. Postal Serv., 6 Fed. Appx. 282, 284 (6th Cir. 2001) ("To prevail, the complainant must prove both aspects of his claim even if, as in this case, he does not proceed against the union."); Phillips v. Nelson Carlson Mech. Contractors, 1989 WL 57707, *2 (N.D. Ill. May 11, 1989)(denying motion to dismiss for failure to join union)).  Accordingly, the Court denies Defendants' Rule 12(b)(7) motion to dismiss.

### C.  No Genuine Dispute of Material Fact on All Claims

### 1.  National Labor Relations Act

Defendants move for summary judgment on Plaintiff's National Labor Relations Act claim.  Defendants maintain that Plaintiff fails to present specific facts showing that a genuine factual dispute exists regarding whether the Union breached its duty of fair representation.  As discussed above, the successful prosecution of a hybrid § 301 claim requires the Plaintiff to prove both that Defendants violated some provision of the CBA between Alcan and the Union and that the Union breached its duty of fair representation to Plaintiff.

The duty of fair representation is breached when a "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190; see also Fine v. CSX Transp., Inc., 229 F.3d 1151 (6th Cir. 2000). "A union's action is 'arbitrary' only if [its conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational.'" Renner v. Ford Motor Co., 516 Fed. Appx. 498,

503 (6th Cir. 2013)(quoting <u>Air Line Pilots v. O'Neill</u>, 499 U.S. 65, 78 (1991)(quoting <u>Huffman</u>, 345 U.S. at 338). "A union acts in 'bad faith' when 'it acts with an improper intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other intentionally misleading conduct.'" <u>Renner</u>, 516 Fed. Appx. at 503 (quoting <u>Merritt v. International Ass'n of Machinists and Aerospace Workers</u>, 613 F.3d 609, 619 (6th Cir. 2010) (citation omitted)). "The Supreme Court has repeatedly emphasized that courts examining union performance 'must be highly deferential,' recognizing the 'wide latitude' needed by union officials to effectively carry out their duties on behalf of union members." <u>Renner</u>, 516 Fed. Appx. at 503 (quoting <u>O'Neill</u>, 499 U.S. at 78).

In his response to the motion for summary judgment, Plaintiff contends that the Union breached its duty of fair representation (1) by recommending that he sign the Last Chance Agreement and Supplemental Last Chance Agreement and (2) by not grieving Alcan's failure to comply with the review requirements of the Last Chance Agreement in accordance with the terms of the CBA. However, Plaintiff's argument is in direct contradiction to his deposition testimony in which he testified that he did not believe the Union breached its duty of representation and that he had no dispute with any action the Union had taken. (Main Dep. 101-106, 173, 175.) "'[W]hen a plaintiff stakes himself to a version of the facts in his sworn deposition testimony, he cannot create a genuine issue of material fact by pointing to other evidence that contradicts his testimony, effectively asking the district court to disregard his own version of the facts.'" <u>Aull v. Osborne</u>, 2009 WL 722605, *2 (W.D. Ky. Mar. 17, 2009)(quoting <u>Sullivan v. City of Satsuma</u>, 2005 WL 2895983, *5 (S.D. Ala. Oct. 28, 2005)). See also <u>Evans v. Stephens</u>, 407 F.3d 1272, 1278 (11th Cir. 2005)("When the nonmovant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially

incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant."); Vigor v. City of Saraland, 2008 WL 5225821, *2 n. 8 (S.D. Ala. Dec. 11, 2008)("[A] plaintiff cannot avoid summary judgment by stitching together a narrative account that rejects his own testimony in favor of some other contradictory bit of evidence.").  For this reason, Plaintiff cannot utilize arguments made in his response to the motion for summary judgment to bolster his case by contradicting his own version of the facts.

Additionally, Main has tendered no evidence or case law to support his argument that the Union's recommendation that he sign both the Last Chance Agreement and the Supplemental Last Chance Agreement establishes any arbitrary, discriminatory, or bad faith conduct by the Union.  See International Union of Operating Engineers, Local 351 v. Cooper National Res., Inc., 163 F.3d 916, 919 (5th Cir. 1999).  The undisputed evidence discloses that Main signed the Last Chance Agreement upon the advice and recommendation of the Union.  Main testified that he was told both by the Union and by Greg Atkinson at Alcan that if he did not agree to the Last Chance Agreement, he would be terminated pursuant to Alcan's discipline policy. (Main Dep. at 55.) The Last Chance Agreement preserved Main's job despite his admitted infractions.  Main acknowledged that under the CBA if an employee incurs four offenses within a two year period, the fourth offense is a dischargeable offense.  (Id. at 54.)  Similarly, Main testified that he was aware that he could grieve the December 2010 infraction with the Union's assistance, but he elected to sign the Supplemental Last Chance Agreement. (Id. at 88.)  "Even if the advice was not sound, a conclusion that itself is not apparent from the record, bad advice alone does not amount to bad faith, arbitrariness, or discrimination."  Husen v. Dow Chemical Co., 2006 WL 901210, *14 (E.D. Mich. Mar. 31, 2006); Burns v. Salem Tube, Inc., 381 Fed. Appx. 178, 182

(3d Cir. 2010).

Likewise, Main has failed to put forth any evidence that by not grieving Alcan's failure to review and remove the Last Chance Agreement, the Union breached its duty of fair representation. A union "possesses discretion to pursue only those grievances it fairly considers to be meritorious." Lewis v. Greyhound Lines–East, 555 F.2d 1053, 1055 (D.C. Cir. 1977); Burns v. Salem Tube, Inc., 381 Fed. Appx. 178, 183 (3d Cir. 2010); Harris v. Amalgamated Transit Union Local 689, 825 F. Supp. 2d 82, 87 (D.D.C. 2011). A last chance agreement "must be thought of as a supplement to the CBA," which "supersed[es the] CBA in certain circumstances because an LCA reflects the parties' own construction of the CBA." International Union of Operating Engineers, Local 351 v. Cooper National Res., Inc., 163 F.3d 916, 919 (5th Cir. 1999). As noted above, Paragraph 4 of the Last Chance Agreement provided that Alcan would determine "whether it is necessary to extend the last chance agreement for an additional period of time." Significantly, in the event Alcan elected to extend the applicability of the Last Chance Agreement for an additional period of time, Alcan's determination could not be challenged by Main or the Union. (Last Chance Agreement ¶ 4.) Thus, the Last Chance Agreement, which now controlled the employment relationship between Main and Defendants, did not require the removal of the Last Chance Agreement and did not provide for a challenge of this review by Main or the Union. Having failed to come forward with proof of arbitrary or bad faith conduct, Main cannot demonstrate a breach of the Union's duty of fair representation.

### 2.  Family and Medical Leave Act

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., entitles qualifying employees up to twelve weeks of unpaid leave each year "to care for a spouse, child, or parent with a 'serious health condition' or if the employee has a 'serious health condition' that

13

renders the employee unable to perform the functions of his job." <u>Payne v. Goodman Mfg. Co.,</u> <u>L.P.</u>, 726 F.Supp.2d 891, 898 (E.D. Tenn. 2010)(citing 29 U.S.C. § 2612(a)(1)(C)-(D)).   It is unlawful for employers to either interfere with the rights afforded employees by the FMLA or retaliate against employees for exercising their FMLA rights. 29 U.S.C. § 2615(a).

Plaintiff alleges that the Defendants retaliated against him for exercising his FMLA rights in violation of 29 U.S.C. § 2615(a)(2).   "The issue in an FMLA retaliation claim is whether an employer retaliated or discriminated against an employee because the employee invoked [his] FMLA rights." <u>Brady v. Potter</u>, 476 F. Supp. 2d 745, 758 (N.D. Ohio 2007). "To establish an initial *prima facie* case of retaliation, a plaintiff must show the following by a preponderance of the evidence: '(1) he engaged in an activity protected by the [FMLA]; (2) that this exercise of his protected rights was known to the defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" <u>Morris v. Family Dollar Stores of Ohio, Inc.</u>, 320 Fed. Appx. 330, 338 (6th Cir. 2009)(quoting <u>Arban v. West Publishing Corp.</u>, 345 F.3d 390, 404 (6th Cir. 2003)).

Plaintiff satisfies the first three prongs of the *prima facie* test.  Main was on medical leave from July 2009 until June 2010; Defendants were aware of his medical leave; and Main suffered an adverse employment action after his return to work.  However, Plaintiff fails to satisfy the fourth prong of his *prima facie* case because he has not presented evidence that there was a causal connection between the protected activity and the adverse employment action.  In fact, contrary to his allegations in his complaint, Main testified at his deposition that although he believed he had a target on his back, he did not believe the medical leave had anything to do with it. (Main Dep. at 113.)  He further testified that there was nothing about the medical leave that he

14

believes contributed to his discharge by Alcan. (Id. at 116.)   As a result, Main has failed to demonstrate a genuine dispute of material fact regarding whether an adverse employment action was taken against him because of his medical leave.   For this reason, the Court grants summary judgment as to this claim.

### 3. Breach of Contract

Plaintiff alleges that Defendants breached the CBA by discharging him without just cause and in contravention of the CBA's prohibition against using discipline in excess of two years for accumulation purposes.   Plaintiff also alleges that Defendants violated the CBA by failing to provide a safe and healthy working environment for their employees.   "Section 301 governs claims founded directly on rights created by collective bargaining agreements, as well as claims that are substantially dependent on analysis of a collective bargaining agreement." Saunders v. Ford Motor Co., 2015 WL 300523, *4 (W.D. Ky. Jan. 22, 2015)(citing Caterpillar Inc. v. Williams, 482 U.S. 386, 394(1987)).   "'Given the importance of maintaining uniform federal law, the Supreme Court has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement.'" Id. (quoting Mattis v. Massman, 355 F.3d 902, 905 (6th Cir. 2004)).   It is clear that this breach of contract claim is a claim for breach of the collective bargaining agreement between Defendants and Plaintiff's Union and, therefore, is completely preempted by § 301 of the LMRA, 29 U.S.C. § 185.   Accordingly, summary judgment is granted on this claim.

### 4.  Wrongful Termination

Count IV of Plaintiff's complaint alleges that that Defendants wrongfully terminated Main in violation of Kentucky public policy.   Specifically, Main alleges he was terminated in violation of the well-defined public policies protected by Kentucky Occupational Safety and

Health Act ("KOSHA").  Specifically, Plaintiff cites KRS § 338.011 which provides as follows:

> The General Assembly finds that occupational accidents and diseases produce personal injuries and illness including loss of life as well as economic loss. Therefore, the General Assembly declares that it is the purpose and policy of the Commonwealth of Kentucky to promote the safety, health and general welfare of its people by preventing any detriment to the safety and health of all employees, both public and private, covered by this chapter, arising out of exposure to harmful conditions and practices at places of work and otherwise to preserve our human resources by providing for education and training, inspection of workplaces, consultation, services, research, reports and statistics, and other means of furthering progress in the field of occupational safety and health.

KRS § 338.011.  Main represents that he was the one who always focused on promoting safety at Alcan.  According to Main, management grew tired of him notifying them about safety concerns at the plant and requesting prompt repairs and resolution of those matters.  As a result of these reports, Main contends that Defendants discharged him in violation of KRS § 338.011.

"Generally, employment relationships in Kentucky are terminable at will meaning 'an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible.'" Gilbert v. Norton Healthcare, Inc., 2014 WL 7338928, *2 (Ky. App. Dec. 24, 2014)(quoting Firestone Textile Co. v. Meadows, 666 S.W.2d 730, 731 (Ky. 1983)).  However, "an employee may file a wrongful discharge claim if he or she was terminated in violation of a well-defined public policy. But, this exception only applies when the statute creating the public policy exception does not provide a structure for pursuing a claim." Collins v. Paintsville Hosp. Co., Inc., 2008 WL 275094, *2 (Ky. App. Feb. 1, 2008); see also  Gilbert, 2014 WL 7338928, *2.  In other words, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky.

1985).

To further the purpose of KRS § 338.011, the Kentucky legislatures enacted KRS § 338.121(3)(a) which prohibits retaliation under KOSHA.[3]  KRS § 338.121(3)(b) further provides that "[a]ny employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of this subsection may, within a reasonable time after such violation occurs, file a complaint with the commissioner alleging such discrimination."   In Benningfield v. Pettit Environmental, Inc., 183 S.W.3d 567, 571 (Ky. App. 2005), the Court held that KRS § 338.121 provides "both the unlawful act and specifies the civil remedy available to aggrieved parties" and, therefore, preempts any wrongful discharge claim. Gilbert, 2014 WL 7338928, *3; Gott v. The Sun Products Corp., 2015 WL 4720212, *9 (W.D. Ky. Aug. 7, 2015). For these reasons, the Court finds that Main cannot seek relief for wrongful termination because the statutes which create the public policy on which he relies specify the civil remedy for a violation.  See also Fogle v. Bluegrass Area Development Dist., 2015 WL 1468184, *3 (E.D. Ky. Mar. 30, 2015).

Furthermore, it would appear to the Court that the public policy exception to the at-will doctrine would not be available to an employee, such as Main, that is hired under the terms of a collective bargaining agreement that the limits the employer's power to terminate union members. See Salyers v. A.K. Steel Corp., 2008 WL 3849918, *3 (E.D. Ky. Aug. 14, 2008) (stating that Kentucky law does not afford a cause of action when an employee's rights and obligations as a union employee are determined by a collective bargaining agreement).  In the present case, Main was not an at-will employee.  Main was subject to the CBA, the Last Chance

---

[3] KRS 338.121(3)(a) provides: "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or herself or others of any right afforded by this chapter[.]"

Agreement, and the Supplemental Last Chance Agreement which governed the employment relationship between Main and Alcan.  See also Klepsky v. United Parcel Services, Inc., 489 F.3d 264, 270–71 (6th Cir. 2007) (under Ohio law, finding plaintiff, a union member, could not maintain a claim because he was not an employee at will); Wells v. Bottling Group., LLC, 2010 WL 4822740, *5 (E.D. Ky. Nov. 22, 2010)(reserving for another day the question of whether or not a wrongful termination claim in violation of public policy is even available to an employee governed by a collective bargaining agreement). Accordingly, summary judgment is granted as to this claim.

### 5. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing of the CBA.  Specifically, Plaintiff asserts that the CBA contained an implied in law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other party to enjoy the benefits of the contract.  Plaintiff contends that Defendants breached this covenant by terminating Main "without just cause and upon a pretext."

Claims for breach of the implied covenant of good faith and fair dealing are preempted by § 301 of the LMRA where the only contract that governs the relationship between the parties is a CBA. "Such a claim, by its nature, involves the interpretation of the collective bargaining agreement[] . . . . Since this claim requires an interpretation of the collective bargaining agreements, it is preempted by § 301 and shall be dismissed." Humphress v. United Parcel Serv., Inc., 31 F. Supp. 2d 1004, 1015 (W.D. Ky. 1997) (citing Allis–Chalmers Corp. v. Lueck, 471 U.S. 202 (1985)).  See also Dobrski v. Ford Motor Co., 698 F. Supp. 2d 966, 987 (N.D. Ohio. 2010); Guerrero v. Hovensa, LLC, 259 Fed. Appx. 453, 458 (3d Cir. 2007); Martinez v. Anselmi & Decicco, Inc., 2009 WL 5206286, *8 (D.N.J. Dec. 22, 2009) ("Thus, to the extent her breach

18

of express contract or breach of the covenant and good faith and fair dealing claims are based on the CBA, they are preempted by the LMRA.").   Because this claim is based on the CBA, summary judgment is granted.

### 6. Intentional Infliction of Emotional Distress

Count VI of the Plaintiff's Complaint asserts a claim against the Defendants for intentional infliction of emotional distress.   Main alleges that Defendants unlawfully harassed, threatened, interrogated, and ultimately terminated Main because of his insistence on putting the safety and health of himself and his coworkers ahead of timely work completed. (Complaint at ¶ 178.) Defendants move for summary judgment on this claim arguing that the Plaintiff cannot prove outrageous conduct or severe emotional distress.

In Kentucky, a claim for intentional infliction of emotional distress is also known as the tort of outrage. Humana of Kentucky, Inc. v. Seitz, 796 S.W.2d 1, 3 (Ky. 1990). To prevail on a claim of intentional infliction of emotional distress, or outrage, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there is a causal connection between the conduct and the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff is severe. Gilbert v. Barkes, 987 S.W.2d 772, 777 (Ky.1999); Kroger Co. v. Willgruber, 920 S.W.2d 61 (Ky. 1996). The Kentucky Supreme Court has set a very high standard for a plaintiff, stating that in order to succeed it is not "enough that the defendant has acted with an intent which is tortious, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice.'. . . Liability has been found only where the conduct [is] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Seitz, 796 S.W.2d at 3 (quoting Restatement (Second) of

Torts, § 46, Comment d)(finding no outrageous conduct where plaintiff delivered a stillborn baby, and the nurses told her to "shut-up" and that they would dispose of the baby right there at the hospital). See also Street v. U.S. Corrugated, Inc., 2011 WL 304568, *7-8 (W.D. Ky. Jan. 25, 2011)(defendant's alleged acts of making the plaintiffs work "off the clock" and discharging them for then working "off the clock" do not rise to the level of outrageousness needed to sustain a claim for intentional infliction of emotional distress); Humphress v. United Parcel Services, Inc., 172 F.3d 48 (6th Cir. 1998)(denying IIED claim because defendant's "conduct, [including: grease placed on parts of his truck; obscenities on his windshield; and defacing picture of his daughter,] did not rise to the level of outrageousness necessary for recovery under Kentucky law").  "Citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action." Kroger Co. v. Willgruber, 920  S.W.2d 61, 65 (Ky. 1996).

In response to the motion for summary judgment, Main argues that his employer targeted him for speaking out about safety issues, harassing him to the point of breaking, forcing him to work overtime in the hottest part of the year mere days after returning from FMLA leave to the point of believing they were trying to kill him, and firing him under pretext and in violation of the Last Chance Agreement, Supplemental Last Chance Agreement, and the CBA.  When viewed in the light most favorable to the Plaintiff, the evidence does not establish that the Defendants' alleged conduct was so outrageous and atrocious as to go beyond "all possible bounds of human decency" and be "utterly intolerable in a civilized society."  Thus, the Defendants' motion for summary judgment as to the intentional infliction of emotional distress claim is granted.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the motion by Defendants, Rio Tinto Alcan Inc, Alcan Primary Metal Group, and Alcan Primary Products Corporation, for summary judgment [DN 27] is **GRANTED.**  A Judgment will be entered consistent with this Opinion.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

February 19, 2016

21